UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT E. PAULY, SANDRA M.
PAULY, ROBERT E. PAULY AND
SANDRA M. PAULY REVOCABLE
TRUST, ROBERT E. PAULY and
SANDRA M. PAULY, individually,

    Plaintiffs,

v.                                        Case No.:  2:24-cv-874-SPC-NPM

HARTFORD INSURANCE
COMPANY OF THE MIDWEST,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment. (Doc. 62). Plaintiffs Robert and Sandra Pauly, individually and as trustees of the Robert E. Pauly and Sandra M. Pauly Revocable Trust, filed a response in opposition (Doc. 84), and Defendant replied (Doc. 87).[1] For the following reasons, the Court grants in part and denies in part Defendant's motion.

---

[1] The Civil Action Order mandates that "[d]ocuments that accompany a paper must be filed as **separate PDF files**, and each must be given a concise, unique, and objective label using the category and description fields provided by the CM/ECF system[.]"  (Doc. 9 at 6) (emphasis added).  Instead of following these instructions, the parties filed each of their exhibits as separate docket entries, which inundated the docket with filings and made sifting through various exhibits cumbersome.  The parties' frequent inability to provide an adequate pinpoint citation further exasperated this issue.  The parties are instructed to abandon this

## BACKGROUND

This is an insurance breach-of-contract case stemming from Hurricane Ian. Defendant issued Plaintiffs a homeowners insurance policy for their residence located in Cape Coral, Florida ("Policy"). After Hurricane Ian damaged the property, Plaintiffs reported the loss to Defendant. After an inspection by Defendant's retained adjuster, Chad Gifford, Defendant determined that the Policy did not cover some of Plaintiffs' reported losses. As for the covered losses, it estimated a $3,054.78 actual cash value ("ACV") and $5,623.52 replacement cost value ("RCV") for dwelling damage, as well as $1,177.09 ACV and $1,276.80 RCV for damage to other structures. But these figures fell below the applicable deductible, so Defendant denied coverage. Plaintiffs also claimed loss to their personal property, but Defendant has issued no payment for such contents.

Dissatisfied with this result, Plaintiffs received their own estimate. Their public adjuster, Rene Espinosa, prepared a revised estimate with a $180,773.75 ACV and a $181,544.94 RCV. Notably, the ACV estimate only includes depreciation for paint work and sealant in the various rooms in the residence. Despite Plaintiffs' proffered estimate, Defendant has not issued any payment. So Plaintiffs sue for breach of contract seeking both ACV and RCV.

---

practice in any future action in this Division. Otherwise, the Court will exercise its discretion to "strike filings that fail to heed this directive." (*Id.*).

**STANDARD OF REVIEW**

Sitting in diversity, the Court applies Florida substantive and federal procedural law. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Id.* At this stage, a court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).

**DISCUSSION**

Defendant moves for summary judgment on several grounds. It argues that Plaintiffs' damages are limited to ACV (which also precludes matching and ordinance-or-law damages); Plaintiffs cannot collect contents damages or, alternatively, such damages are limited to ACV; Plaintiffs cannot show

3

Defendant breached the Policy because their ACV estimate is speculative; that damages to Plaintiffs' pavers are excluded under the Policy's water-damage exclusion; and the Policy's rainwater limitation precludes recovery for interior damages. The Court addresses each issue in turn.

### A.     Plaintiffs' damages are limited to ACV.

Subject to exceptions not at issue here, the Policy's loss-settlement provision provides that for covered loss to dwelling and other structures, Defendant "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." (Doc. 56-1 at 49). In other words, Defendant first pays the ACV and then pays the repair/replacement costs as they are incurred. This Policy provision matches the requirement in Fla. Stat. § 627.7011(3)(a).[2]  Consistent with the Policy and § 627.7011(3)(a), "courts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed." *Ceballo v. Citizens Prop. Ins.*, 967 So. 2d 811, 815 (Fla. 2007); *see also CMR Constr. & Roofing, LLC v. Empire Indem. Ins.*, 843 F. App'x 189, 192 (11th Cir. 2021). So Defendant argues that because Plaintiffs have submitted

---

[2] This statute provides that, in the event of a loss to a dwelling insured on the basis of replacement costs, "the insurer must initially pay at least the actual cost value of the insured loss, less any applicable deductible. The insurer shall pay any remaining amounts necessary to perform such repairs *as work is performed and expenses are incurred.*" Fla. Stat. § 627.7011(3)(a) (emphasis added).

4

no evidence of repairs conducted on the property, they cannot collect such costs here.

In response, Plaintiffs do not argue that they have conducted repairs. Instead, they argue that they did not need to incur the repair or replacement costs to collect RCV (despite the Policy's plain language) because Defendant denied their claim. In support, they rely on *Citizens Property Insurance v. Tio*, 304 So. 3d 1278 (Fla. Dist. Ct. App. 2020). There, Citizens argued to the trial court that the plaintiff was not entitled to consideration of RCV damages because he had not undertaken any repairs to the subject property. *Id.* at 1279. The trial court disagreed, and a jury awarded the plaintiff RCV damages. *Id.* Affirming the trial court's decision, Florida's Third District Court of Appeal was unpersuaded by Citizens' "rather creative, though unavailing argument that, when an insurer wrongfully denies coverage of a claim—causing its insured to file suit against the insurer for breaching the insurance contract— section 627.7011(3) limits the breach of contract damages a jury may award, as if the insurer had not breached the insurer contract." *Id.* at 1280. The *Tio* court found that § 627.7011(3) "does not operate as a limitation on a policyholder's remedies for an insurer's breach of an insurance contract." *Id.* Citing *Tio*, Plaintiffs insist that, because Defendant denied their claim and has issued no payment, it is entitled to RCV damages despite their failure to first undertake repairs.

No doubt *Tio* is on point. But more recently, Florida's Fourth District Court of Appeal issued an opinion in direct conflict with *Tio*. *See Universal Prop. & Cas. Ins. v. Qureshi*, 396 So. 3d 564 (Fla. Dist. Ct. App. 2024). Certifying a conflict with *Tio*, the *Qureshi* court sided with the courts that "have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed." *Id.* at 567 (citing *Cabello*, 967 So. 2d at 815). So, in the *Qureshi* court's view, the fact that the insurer denied the insured's claim does not relieve the insured of its obligation to incur the repair or replacement costs before the insurer will pay such costs.

The Court finds *Qureshi* more persuasive than *Tio*.[3] As noted, courts almost uniformly hold that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed. *Tio* is an outlier. And apart from any legal authority, the plain language of the Policy requires Plaintiffs to incur the repair or replacement costs before Defendant

---

[3] Generally, this Court adheres to decisions of Florida's intermediate appellate courts, absent precedent from the Florida Supreme Court. *See Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015) ("If there is no [Florida Supreme Court] precedent, we adhere to decisions of Florida's intermediate appellate courts absent some persuasive indication that the Florida Supreme Court would decide the issue otherwise." (citations omitted)). Where Florida's appellate courts are split on an issue, however, the Court follows the law of the appellate district in which the Court is located. *See United States v. Montague*, 437 F. App'x 833, 836 (11th Cir. 2011). Because this Court sits in Florida's Sixth District Court of Appeal, neither *Tio* nor *Qureshi* are binding. *See id.* (explaining that "a sister district's opinion is merely persuasive").

will issue such payment. "[C]ourts are not to rewrite insurance contracts and should bear in mind that if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Qureshi*, 396 So. 3d at 567 (internal citation and quotations omitted). Defendant insists Plaintiffs have undertaken no repairs or replacement (and Plaintiffs do not argue otherwise). So, to the extent Plaintiffs have not incurred any repair or replacement costs, their damages are limited to ACV.[4]

On that score, if Plaintiffs have not incurred any repair or replacement costs, matching and ordinance-or-law damages are unavailable.[5] *See Citizens Prop. Ins. v. Salazar*, 388 So. 3d 115, 118 (Fla. Dist. Ct. App. 2023) ("[P]rojected matching costs are not included as part of the actual cash value of an insured loss and an insurer is only obligated to pay such costs as the repairs are performed."); *Buckley Towers Condo., Inc. v. QBE Ins.*, 395 F. App'x 659, 665 (11th Cir. 2010) ("[U]nder Florida law and under the terms of the contract, Buckley Towers is not entitled to law and ordinance damages because it never

---

[4] Although undeveloped, Plaintiffs suggest in a footnote in their statement of facts section that they have incurred costs on a few items. (Doc. 84 at 8 n.28). Defendants ignore this point.

[5] Defendant argues Plaintiffs cannot recover the cost of their roof replacement under ordinance-or-law coverage. (Doc. 62 at 18–19). Plaintiffs respond that they are not seeking ordinance-or-law coverage for the roof. Rather, they seek costs for a total roof replacement because the roof was damaged beyond repair. (Doc. 84 at 19). So the ordinance-or-law issue appears moot. But either way, the costs for a roof replacement are unavailable here because Plaintiffs have not yet incurred such costs.

7

repaired the property and never actually incurred increased damages due to the enforcement of laws or ordinances."). What's more, the Policy provides coverage only for "direct" loss to the residence (Doc. 56-1 at 43), which also renders matching costs unavailable. *See CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 2:19-CV-442-FTM-29-MRM, 2021 WL 877560, at *8 (M.D. Fla. Mar. 9, 2021).

### B. Plaintiffs cannot recover contents damages.

Pre-suit, Plaintiffs submitted to Defendant an inventory list identifying eleven damaged personal items with a replacement cost totaling $8,950. (Doc. 56-1 at 147; Doc. 60-1 at 14). The list was initially unaccompanied by any supporting receipts or invoices. After Plaintiffs initiated litigation, they submitted five Amazon receipts for various items totaling $1,973.53, a credit card statement showing a $483.45 purchase from Char Broil LLC, and a Lowe's credit card statement showing a $4,262.45 balance. (Doc. 60-1 at 15–21).

Defendant argues that Plaintiffs cannot recover for such contents because the purported damages are unsupported by invoices and are thus speculative. Alternatively, Defendant argues Plaintiffs are limited to the ACV of such items. Plaintiffs respond that the submitted inventory list is sufficient because nothing in the Policy requires them to submit invoices before payment, and their damages are not speculative.

The Policy explains that personal property is settled "at actual cash value at the time of loss but not more than the amount required to repair or replace." (Doc. 56-1 at 48). So Defendant is obligated to pay Plaintiffs only the ACV for damaged personal property.[6] ACV is RCV minus depreciation. Thus, for Plaintiffs "to properly request the ACV of their personal property they had to provide [Defendant] with the RCV of the items and the appropriate allocated depreciation for that item." *Homeowners Choice Prop. & Cas. Ins. v. Clark*, No. 1D2023-1622, 2025 WL 850677, at *6 (Fla. Dist. Ct. App. Mar. 19, 2025). Here, Plaintiffs fail to do so.

Plaintiffs fail to establish the ACV of their damaged contents. The inventory list simply lists the damaged items and the cost to replace each item. In fact, the line designated for depreciation is marked 0% for each item. (Doc. 60-1 at 14). The credit-card statement showing a $483.45 purchase from Char Broil LLC is also useless as it does not indicate what item was purchased. The same is true for the Lowe's credit card balance sheet. While the Amazon receipts are itemized, these receipts only establish the replacement cost of the purchased items. Put simply, there is no evidence in the record of the ACV for

---

[6] Despite Plaintiffs' contention that they were not required to submit invoices, the Policy says otherwise. Specifically, under "Duties After Loss," Plaintiffs were required to "[p]repare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss [and] [a]ttach all bills, receipts and related documents that justify the figures in the inventory[.]" (Doc. 56-1 at 48).

any of Plaintiffs' claimed personal-property damages, and "a jury cannot speculate what the depreciation would have been[.]" *Clark*, 2025 WL 850677, at *6. So Plaintiffs cannot collect their contents damages here.[7]

### C. Whether Defendant breached the Policy is a factual question for the jury.

Defendant argues Plaintiffs cannot show it breached the Policy because their ACV estimate is speculative. When an insurer claims the insured's ACV payment is inadequate, § 627.7011(3)(a) places the initial burden on the insurer to show that it paid "at least the actual cash value of the insured loss." *Clark*, 2025 WL 850677, at *10. "But once the insurer provides an ACV estimate and pays that sum, the burden shifts to the insured to demonstrate that the payment did not reflect the fully insured loss." *Id.* Defendant argues Plaintiffs have not met their burden of showing its ACV determination was inadequate because their ACV estimate is speculative.

Rene Espinosa prepared Plaintiffs' estimate. The revised estimate includes a $180,773.75 ACV and a $181,544.94 RCV. (Doc. 65-1 at 88–177). The difference between the two figures is a mere $771.19. Thus, for the entire dwelling, Espinosa identified only $771.19 in depreciation. And the only

---

[7] Plaintiffs focus a great deal on the fact Defendant apparently authorized a check for Plaintiffs' contents damages (in an apparent approval of such damages) but never sent it. (Doc. 84 at 20). The Court fails to see the relevance of this point. They also broadly assert, without any support, that Defendant "waived greater detailed payment proof by not requesting such—ever." (*Id.* at 21). Given the argument is undeveloped, the Court disregards it.

10

depreciation identified is for paint and sealant in the various rooms in the house. This nominal depreciation in the estimate means that, except for paint, the ACV and RCV are identical.[8]

Courts have found that when ACV and RCV in an estimate are identical, the estimate is really one for RCV, not ACV, because it did not account for depreciation. *See Metal Prods. Co., LLC v. Ohio Sec. Ins.*, No. 5:19-CV489-TKW-MJF, 2021 WL 1345525, at *2 (N.D. Fla. Apr. 12, 2021), *aff'd*, No. 21-11612, 2022 WL 104618 (11th Cir. Jan. 11, 2022) (explaining that, although the plaintiff's estimate included a column titled ACV, "it is undisputed that those amounts were not ACVs because they are the same as the corresponding amounts in the RCV column and the . . . estimate did not include any amounts for depreciation"). And without an ACV estimate, a jury cannot reasonably conclude "that the ACV of the covered loss exceeds the amounts already paid by Defendant." *Id.*; *see also Salazar*, 388 So. 3d at 118 (holding that because the homeowner never submitted evidence of ACV, the jury could not parse the RCV estimate to determine ACV "without improper guessing and speculation").[9]

---

[8] For context, Espinosa included no depreciation for the roof (which was last replaced in 2005).

[9] Plaintiffs cite *Siegel v. Tower Hill Signature Ins. Co.*, 225 So. 3d 974 (Fla. Dist. Ct. App. 2017) and *Vazquez v. S. Fid. Prop. & Cas., Inc.*, 230 So. 3d 1242 (Fla. Dist. Ct. App. 2017) for the proposition that it is for the jury to decide the appropriate ACV amount. But in each of these cases, the insured submitted an ACV estimate, which created a genuine dispute as to

Defendant's argument is persuasive but unavailing. Espinosa testified that he applied minimal depreciation because, before the loss, the property was in great condition. (Doc. 61-1 at 140:2–141:15). In other words, he intentionally excluded depreciation because he felt there simply was none. As unbelievable as this may seem to the Court, Espinosa's testimony distinguishes this case from *Metal Prods. Co.* and *Salazar*. And the believability of his testimony is for the jury to decide. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) ("Indeed, if the only issue is one of credibility, the issue is factual, and a court cannot grant summary judgment." (citation and quotations omitted)); *United States v. Castaneda-Reyes*, 703 F.2d 522, 524 (11th Cir. 1983) (explaining the believability of expert witnesses is for the jury's determination).

Defendant also attempts to discredit Espinosa's estimate by attacking his methodology. For instance, Defendant notes that Espinosa could not explain how he calculated depreciation, he did not know the property's age or the date of renovations, and the estimate includes other unrecoverable expenses. (Doc. 62 at 21–22). But these attacks are better served for a *Daubert*

---

whether the insurer's initial ACV payment was adequate. Here, Plaintiffs arguably did not submit an ACV estimate (because their ACV and RCV estimates are practically identical). So *Siegel* and *Vazquez* are not inconsistent with *Metal Prods. Co.* and *Salazar*.

motion (which Defendant did not file) or cross-examination. Because a fact question exists, the Court denies summary judgment on this ground.

### D. The Policy's water-damage exclusion does not bar coverage for Plaintiffs' damaged pavers.

Plaintiffs seek coverage for damages to a handful of pavers on their back patio. It is unclear exactly how the pavers were damaged. Plaintiffs' engineer John McHugh explained that the damage occurred when rainwater flowing from a missing gutter downspout pooled on top of the pavers resulting in their displacement. (Doc. 59-1 at 141:15–142:17). Plaintiffs characterize it differently in their response, arguing that the *force* of the rainwater gushing from the broken gutter caused the pavers' displacement. (Doc. 84 at 23). Either way, the Policy does not cover loss caused by "water damage," which is defined as "flood, surface water, waves, overflow of a body of water, or spray from any of these, whether or not driven by wind[.]" (Doc. 56-1 at 46–47). Defendant argues the rainwater from the gutter constituted "surface water," so coverage for the pavers is excluded.

The Policy does not define "surface water." However, Florida courts have defined surface water as water "which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such diffused state of condition." *Schwartzben v. Nat'l Fire & Marine Ins. Co.*, No. 22-20755-CIV, 2023 WL

13

3600604, at *3 (S.D. Fla. May 4, 2023) (citing *McCorkle v. Penn Mut. Fire Ins. Co.*, 213 So. 2d 272, 273 (Fla. Dist. Ct. App. 1968)). And surface water "follow[s] no defined course or channel." *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 20 (11th Cir. 2012) (citations omitted). Based on this definition, the Court finds the rainwater that damaged Plaintiffs' pavers was not "surface water."

Although the exact manner in which the pavers were displaced is unclear (from pooling rainwater or from the flowing rainwater's force), it appears undisputed that rainwater discharged from the broken gutter caused the pavers' displacement. Because the rainwater collected in the gutter, which is a "defined channel," causing the rainwater to divert and concentrate in the distinct area of the pavers, the water was not "surface water" when it contacted the pavers. In other words, but-for the gutters artificially diverting the rainwater, the rainwater would not have accumulated on the damaged pavers. Indeed, some courts have found that artificial channels that divert and concentrate the flow of surface water—such as gutters—can convert surface water into something else. *See Ridgewood Grp., LLC v. Millers Cap. Ins. Co.*, No. 1138 EDA 2016, 2017 WL 781620, at *3 (Pa. Super. Ct. Feb. 28, 2017) (citing *Heller v. Fire Ins. Exch., a Div. of Farmers Ins. Grp.*, 800 P.2d 1006, 1009 (Col. 1990)). The Court finds these cases persuasive. Thus, the damage

14

to the pavers was not caused by "surface water" and does not fall within the Policy's water-damage exclusion.

### E. Whether the rainwater limitation applies is a factual question for the jury.

Finally, Defendant argues that damage to the interior of Plaintiffs' home is precluded by the Policy's rainwater limitation. A Policy endorsement provides that coverage for loss caused by a hurricane includes loss to the inside of a building "[i]f the direct force of the windstorm damages the building, causing an opening in a roof or wall and the rain, snow, sleep, hail, sand or dust enters through this opening." (Doc. 56-1 at 78). In short, the Policy only provides coverage to the interior of the home if the property's exterior first sustains windstorm damage that allows the water intrusion.

Defendant concedes that Plaintiffs' engineer, McHugh, identified a storm-created opening in the master bedroom that allowed water to enter the home, causing damage. (Doc. 62 at 5, 24). Nevertheless, it argues Plaintiffs have not shown the rainwater limitation applies by attacking McHugh's methodology. For instance, Defendant argues McHugh did not identify areas of moisture in the attic correlating to the water damage, did not view the underlayment to identify any openings, did not rule out other potential causes, and confirmed there was no ceiling damage around the water damage. (Doc. 62 at 24). Defendant also broadly notes that Plaintiffs did not initially report

15

any interior water intrusion or damage, and that Mr. Pauly described the damage as "nail marks" rather than water damage and was unsure when he first noticed such marks. (*Id.*). These are all great points for cross examination, not summary judgment. So the Court denies summary judgment on this issue.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. 62) is **GRANTED in part and DENIED in part**:

1. To the extent Plaintiffs have not incurred repair or replacement costs, they are limited to ACV damages.

2. Plaintiffs cannot recover contents damages.

3. Whether Defendant breached the Policy is a factual question for the jury.

4. The Policy's water-damage exclusion does not bar coverage for Plaintiffs' damaged pavers.

5. Whether the rainwater limitation applies is a factual question for the jury.

6. The Court will set a status conference by separate notice to discuss how this case will proceed.

**DONE** and **ORDERED** in Fort Myers, Florida on June 13, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

17